FILED
'06 JUL 28 PM 2 37
BRENDA DESHIELDS
CIRCUIT RECORDER
BENTON COUNTY, AR

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

MARY JANE CAMPBELL PLAINTIFF

VS. NO. CV-2006-1492-4

DAVOL INC., C. R. BARD, INC.,
SURGICAL SENSE, INC.,
JOHN DOE I, JOHN DOE II,
JOHN DOE III, JOHN DOE IV
and JOHN DOE V DEFENDANTS

**COMPLAINT**

**JURISDICTION AND VENUE**

1. The Circuit Court of Benton County, Arkansas, has jurisdiction of this case because of the fact the Plaintiff is seeking damages against the Defendants in this civil proceeding thereby giving this Court jurisdiction under Ark. Const. art. 7, § 11, and Ark. Code Ann. § 16-13-201.

2. The venue for this action is in Benton County, Arkansas, pursuant to the provisions of Ark. Code Ann. § 16-60-112 and Ark. Code Ann. § 16-55-213 (Civil Justice Reform Act of 2003).

**PARTIES**

3. Plaintiff, Mary Jane Campbell, at the time of the occurrence, and all of the events described herein, and at the time of the filing of the Complaint, was

and is a resident of 1001 Bella Vista Road, Bentonville, Arkansas, Benton County, Arkansas 72712.

4. The first Defendant is Davol Inc., whose business address is 100 Sockanossett Crossroad, Cranston, Rhode Island 02920. The registered agent for service for Davol Inc. is CT Corporation System, 10 Weybosset Street, Providence, Rhode Island 02903.

5. The second Defendant is C. R. Bard, Inc. a New Jersey corporation, whose business address is 730 Central Avenue, Murray Hill, New Jersey 07974. The registered agent for C. R. Bard, Inc. (hereinafter Bard) is Nadia J. Bernstein, whose address is 730 Central Avenue, Murray Hill, New Jersey 07974.

6. The third Defendant is Surgical Sense, Inc. Defendant, Surgical Sense, Inc. was a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Arlington, Texas. The Texas Secretary of State's Office shows that Surgical Sense, Inc. has been voluntarily dissolved.

7. In 2000, Davol, Inc. and C.R. Bard, Inc. acquired the assets and liabilities of Surgical Sense, Inc., including its Kugel Hernia Patch product line.

8. There are a number of John Does listed as defendants in the case. Cindy Hawkins, one of the attorneys for the Plaintiff, will file an Affidavit as to Unknown Tortfeasors, in this case, to be filed along with the Complaint.

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL COUNTS

9. In 1999, Mary Campbell had breast cancer and underwent a right mastectomy.

10. On May 21, 1999, Mary Campbell had surgery at St. Mary's Hospital for a breast reconstruction procedure. Dr. Roger Alderson harvested fat from Ms. Campbell's stomach to reconstruct a breast via a tram flap procedure. Dr. Alderson placed a Kugel Hernia Patch in Mary Campbell's stomach following the tram flap procedure.

11. The Patch that was implanted into Mary's abdomen is shown on the St. Mary's Hospital Surgical Implant Record as a Kugel Hernia Patch TM, Size: Large Oval "14 x 18cm), Cat. No.: 10-102, Lot 101698, Surgical Sense, Inc. TM, 2012 E. Randol Mill Road, Suite 211, Arlington, TX 76011. SS No. 310102 Rev. C.

12. Defendant, Surgical Sense, Inc. manufactured and distributed the device described in the procedural note at St. Mary's Hospital, in an operation that took place on May 21, 1999, as a Kugel Hernia Patch TM, Size: Large Oval "14 x 18cm), Cat. No.: 10-102, Lot 101698. This will hereinafter be described as the Kugel Hernia Patch.

13. Kugel Hernia Patch is a Polypropylene surgical mesh for use in all forms of hernia repair, e.g., Inguinal, femoral, incisional, and ventral hernia

repairs in the abdominal wall and the groin area. The Kugel Hernia Patch was manufactured by Davol, Inc. (who acquired Surgical Sense, Inc. who formerly manufactured the Kugel Hernia Patch, and assumed, by law and contract, all of the liabilities of Surgical Sense, Inc.).

14. The Kugel Hernia Patch has a proprietary "memory recoil ring" sandwiched between two layers of mesh, which allows the patch to open fully and maintain its shape. The positioning pockets are used to guide the patch into proper placement.

15. Following her surgery to implant the Kugel Hernia Patch into her abdominal wall, the Kugel Hernia Patch malfunctioned, causing the injuries and damages to Mary Campbell described herein.

16. The Kugel Hernia Patch, manufactured, distributed and sold by the Defendants, was used in the surgery on the part of the Plaintiff, was defective, and by reason of the allegations herein, the Kugel Hernia Patch was defective, caused infection to set in and to injure and damage the Plaintiff, as hereinafter set forth, and this subjects the Defendants to liability to the Plaintiff under these circumstances.

17. Following the implant of the patch, Mary developed chronic, unexplained abdominal pain. She had several x-rays of her abdominal area but nothing could be seen on the x-ray.

18. Eventually, Mary Campbell developed an area of tenderness in the left pelvic area under the left lower abdominal scar-with palpable foreign body.

19. On July 31, 2003, Mary Campbell, had an Ultrasound of her abdominal and pelvic area. During that procedure, a foreign object was shown on the film inside Mary's body.

20. It was a slim long tubular object, about nine to eleven inches, which was later determined to be a "memory recoil ring" from the Kugel Hernia Patch.

21. Mary Campbell was scheduled to see surgeon, Steven Morrison, to remove the foreign object.

22. During the few days that she had to wait to see Dr. Morrison, the foreign object began to work out of her stomach and began extruding through her skin. On the day of her appointment to see Dr. Morrison, she raised her shirt to show the nurse the foreign object that was protruding from her body when the object fell completely out of her body.

23. At the time that she saw Dr. Morrison, he could not identify the foreign object after examining it.

24. Mary developed reoccurring Cellulitis in her abdominal wall and was treated by Dr. Greg Tubre, M.D.

25. Mary Campbell developed an abdominal mass that was filled with infection and was sore and very painful.

26. Mary Campbell suffered excruciating unexplained persistent chronic pain in her abdominal area.

27. Mary Campbell suffered with urinary urgency and incontinence.

28. Mary Campbell suffered with high fevers as a result of the infection in her body caused by the defective Kugel Hernia Patch.

29. Mary Campbell suffered with swelling and tenderness in her abdominal area.

30. Mary Campbell suffered with chronic and severe infections inside her abdominal area requiring hospitalizations, several surgeries and months of treatment for these infections.

31. The recoil ring broke inside Mary Campbell's abdomen and migrated through her abdominal area and eventually broke through the skin and exited out her stomach wall.

32. At the time surrounding the surgery, the Plaintiff had taken time off from working to care for her husband, mother and father who were all terminally ill. Prior to their illnesses she worked full time. She expected to return to work after the deaths of her family members; however, because she was so sick from the complications resulting from the failure of the Kugel Hernia Patch and was in such pain, she was unable to return to work for several years. After her long recuperation period following her final surgery, wherein Dr. Mary Leah Oman removed all of the defective and infected Kugel Hernia Mesh and replaced the

Patch with a Permacol porcine prosthetic mesh graft, Mary Campbell has finally been able to return to full-time work. She lost several years of wages as a result of the failure of the Kugel hernia patch failure.

33. Because of the introduction of the defective Kugel Hernia Patch, in the surgery, subsequent surgeries were required, and the Plaintiff is still suffering from the injuries and damages caused by the defective Kugel Hernia Patch.

34. The subsequent treatment required by the Plaintiff, includes, but is not limited to, going back for additional surgeries. She had exploratory abdominal surgeries in November of 2003 and October of 2004 to look for additional foreign materials and abscesses, additional ultrasounds were performed to determine if there were additional pieces of foreign material inside of her, and she had surgeries to remove the infected hernia mesh.

35. In October 2004, the surgeon, Dr. Mary Leah Oman, on this occasion, opened her up, to undergo incision and drainage of a chronically infected abdominal wound. This was done in the operating room, revealing a large open wound in the tract essentially all the way down her abdominal cavity to the abdominal wall to the right lower quadrant. The wound was opened and drained intact. It was a very deep, painful, and complex wound. Mary Campbell had to stay in the hospital for two additional days so that the hospital staff could dress the wound. Mary Campbell was released from the hospital, with the wound open and started packing the area every day, and this went on for several weeks.

This was a wide open exposure of her body at this time because of the introduction of the defective Kugel Hernia Patch into her body.

36. On December 22, 2005 and January 13, 2006, Davol, Inc. and C.R. Bard, Inc. announced a recall of the Composix Kugel Mesh X-Large Patch. In March 2006, Davol, Inc. and C.R. Bard, Inc. recalled the Composix Kugel Mesh Large patches as well.

37. Davol, Inc. and C.R. Bard Inc. are the manufacturers of the Composix Kugel Mesh Patch.

38. Davol, Inc. conducted the recall of the Patches because they identified the potential for PET recoil ring breakage which could potentially lead to patient complications such as abdominal pain, bowel perforation or chronic enteric fistulas.

39. The "memory recoil ring" is a plastic coil ring designed to aid in the deployment of the hernia patch but can break when increased stress is placed on it from certain surgical placement techniques. As of the recall date, the company received 24 reports of broken rings with the product.

40. A malfunction of this device can lead to bowel perforations and/or chronic intestinal fistulas (abnormal connections or passageways between the intestines and other organs).

41. In the recall notices, Davol, Inc. lists symptoms that could be associated with ring breakage such as unexplained or persistent abdominal pain,

fever, tenderness at the implant site or other unusual symptoms in the recall notice.

42. In the recall, Davol lists conditions that could be associated with recoil ring breakage, including bowel obstruction, perforation or fistula, abdominal wall pain or infection, palpable abdominal wall mass, migration or movement of the ring to the abdominal wall, perineum or intra-abdominal organs.

43. The products affected by the recall were distributed to customers worldwide.

44. The Kugel Hernia Patch implanted into Mary Campbell was manufactured in the same or in a similar manner as the recalled patches. Mary Campbell's Kugel Hernia Patch was of the same size as the recalled patch and contained the same or similar "memory recoil ring". Mary Campbell suffered symptoms and injuries consistent with the symptoms and injuries described by the recall information as suffered by the other individuals affected by the defective Bard Mesh Patches.

COUNT I

45. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in Paragraph Nos. 1-44, inclusive, of the Complaint as a part of this count.

46. The injuries and damages complained of by the Plaintiff were caused by the defective Kugel Hernia Patch, manufactured, distributed and sold

by the Defendants, and the Defendants were guilty of negligence, which negligence consists of, but is not limited to, the following, which negligence was a proximate cause of the alleged injuries and damages sustained by the Plaintiff, as follows:

a. Negligently failed to design, manufacture and construct a Kugel Hernia Patch that operated properly under the circumstances.

b. Negligently failed to design, manufacture and deliver and sell a Kugel Hernia Patch that was sanitary under these conditions and circumstances.

c. Negligently failed to provide adequate protection to the Plaintiff, and others similarly situated, by reason of the fact that they supplied a defective Kugel Hernia Patch, which was subject to a recall, because of inherent defective conditions in the design, manufacture and distribution of the product.

d. Negligently designed, manufactured, sold and distributed a Kugel Hernia Patch that failed to protect the Plaintiff from bodily injury under these circumstances.

e. Failed to use ordinary care under the circumstances.

f. Failed to design, manufacture, construct and sell a Kugel Hernia Patch that would protect the Plaintiff, from injuries and damages, including, but not limited to, the failure to properly design and supply

a Kugel Hernia Patch that would not cause infection, and other injuries and damages to the Plaintiff.

g. At all times mentioned in this complaint, the Defendants so negligently and carelessly designed, manufactured, constructed and assembled, inspected and sold the Kugel Hernia Patch that it was dangerous and unsafe for its intended uses of hernia repair.

h. Other negligence that will be described during the course of the litigation.

**COUNT II**

47. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in Paragraph Nos. 1-46, inclusive, of the Complaint as a part of this count.

48. Plaintiff contends that the Defendants were engaged in the business of manufacturing, assembling, selling, and distributing a Kugel Hernia Patch, and that the Kugel Hernia Patch in question was supplied by Defendants in a defective condition which rendered it unreasonably dangerous, and that the defective condition was a proximate cause of the Plaintiff's injuries and damages. Plaintiff contends the Defendants are strictly liable to the Plaintiff.

**COUNT III**

49. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in Paragraph Nos. 1-48, inclusive, of the Complaint as a part of this count.

50. Plaintiff contends the Defendants impliedly warranted that the Kugel Hernia Patch was merchantable at the time it was manufactured, sold, and distributed, and installed in the Plaintiff. Plaintiff contends that there was a breach of the implied warranty of merchantability. The Kugel Hernia Patch was not fit for the particular purpose for which it was used, and it was not adequately constructed, and did not conform to the promises and affirmations of the Defendants. Plaintiff contends the Defendants breached the warranty of merchantability in that the Plaintiff sustained injuries and damages as a result of the defective Kugel Hernia Patch, placed in her during the surgery, as indicated herein, and that the Kugel Hernia Patch was not merchantable, and that the unmerchantable condition was a proximate cause of the injuries and damages sustained by the Plaintiff. Plaintiff was an individual whom Defendants would reasonably expect to use, consume, and be affected by the defective Kugel Hernia Patch. Plaintiff gave reasonable notice to the Defendants of the breach within a reasonable period of time, but the Defendants failed to cure the breach.

COUNT IV

51. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in Paragraph Nos. 1-50, inclusive, of the Complaint as a part of this count.

52. Plaintiff claims damages from Defendants on the ground that the Kugel Hernia Patch was not fit for the particular purpose for which it was intended. Defendants, at the time of manufacturing, designing, and sale and distribution of the Kugel Hernia Patch, had reason to know the particular purpose for which the Kugel Hernia Patch was required. Defendants knew Plaintiff was relying upon the Defendants' skill and judgment to select and furnish a suitable Kugel Hernia Patch. The Kugel Hernia Patch was not fit for the particular purpose for which it was required, and this unfitness was a proximate cause of Plaintiff's damages and injuries. Plaintiff was an individual whom Defendants would reasonably have expected to use, consume, and be affected by the Kugel Hernia Patch.

COUNT V

53. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in Paragraph Nos. 1-52, inclusive, of the Complaint as a part of this count.

54. Plaintiff claims damages from Defendants on the ground that Defendants made, and breached, certain express warranties concerning the

Kugel Hernia Patch. Plaintiff contends express warranties were created by contract executed between the parties when the Kugel Hernia Patch was purchased for installation in the Plaintiff, during the surgery, as hereinafter recited, and the Kugel Hernia Patch delivered to the Plaintiff did not conform to the express warranties created. The failure of the Kugel Hernia Patch to conform to the express warranties was a proximate cause of the Plaintiff's injuries and damages. Plaintiff was an individual whom Defendants might reasonably expect to use, consume, and be affected by the Kugel Hernia Patch.

**COUNT VI**

**RES IPSA LOQUITUR AS TO DEFENDANTS**

55. As a cause of action and ground for relief Plaintiff alleges the factual matters described in Paragraph Nos. 1-54, inclusive, of the Complaint as a part of this count.

56. Defendants owed a duty to provide a Kugel Hernia Patch that was in good condition, was not defective, and that was sanitary, free of infection, and would not harm the Plaintiff, when installed during her surgery that took place in July 2003.

57. Defendants designed, manufactured, and distributed the Kugel Hernia Patch, which was under the charge and control of the Defendants, and they had charge of the Kugel Hernia Patch, and equipment, prior to the installation of the Kugel Hernia Patch during the surgery, with the exception of

Case 5:06-cv-05154-JLH Document 1-2 Filed 08/22/2006 Page 15 of 21



the reception of this by the medical care facility and the surgeon, and under the circumstances, this invokes the legal doctrine of res ipsa loquitur as to these Defendants.

58. All of the elements for the application of res ipsa loquitur are present under the circumstances, in view of the fact that all of the elements required for the application of res ipsa loquitur, which is described in AMI 609, which are incorporated herein by reference, are present in this case, as follows, viz:

a. The injuries and damages were attributable to the defective Kugel Hernia Patch, which was, with the exception of the surgery, under the exclusive control of the Defendants, and had not changed or in any way left the control of the Defendants, during the course of the time that it was manufactured, distributed, and ultimately used during the surgery.

b. That in the normal course of events no injury would have occurred if the Defendants had used ordinary care while the Kugel Hernia Patch was being utilized in the surgery, said equipment being under the control of the Defendants.

c. The Defendants, in their control and management and operation of the Kugel Hernia Patch, owed a duty to the Plaintiff to use ordinary care with regard to the proper operation of the Kugel Hernia Patch and/or safety precautions so as to make sure that it was sanitary,

free of infection, which it was not, in this case, and the Defendants had to make sure that the Kugel Hernia Patch was safe to be implanted in the Plaintiff, which did not occur under these circumstances, and, therefore, this invokes the application of this doctrine.

**COUNT VI**

59. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in Paragraph Nos. 1-58, inclusive, of the Complaint as a part of this count.

60. Defendants, by reason of the manufacturing, sale and distribution of the Kugel Hernia Patch, entered into a contract with the Plaintiff, and under this contract they owed a duty to the Plaintiff to provide a proper and non-defective Kugel Hernia Patch, which was not done under these circumstances, and, therefore, the Defendants breached the contractual relationship between the Defendants and the Plaintiff, and, therefore, Plaintiff asserts a cause of action for breach of contract against the Defendants.

61. By reason of the breach of contract, in the event the jury determines that there was a breach of contract, then the Plaintiff asks for attorney's fees from the Defendants who breached the contract pursuant to the provisions of Ark. Code Ann. § 16-22-308.

## STATUTE OF LIMITATIONS PERIOD

62. In product liability cases, the statute of limitations does not commence running until the plaintiff knew, or by the exercise of reasonable diligence should have discovered, the causal connection between the product and the injuries suffered. Martin v. Arthur, 339 Ark. 149, 3 S.W.3d 684 (1999).

63. Mary Campbell first discovered an unidentified foreign object inside her body in her abdominal area at the time of the ultrasound on July 31, 2003. After the foreign object extruded from her body, Dr. Stephen Morrison could not identify the foreign object. Subsequently, it was discovered by Dr. Mary Leah Oman during surgery, that the Kugel Hernia Patch had failed when she found that the hernia patch had disengaged inside Mary Campbell, and it could be determined that the formerly unidentified foreign object was the "memory recoil ring" from the Kugel Hernia Patch. Therefore, Mary Campbell has brought her action timely and prior to the expiration date of the statute of limitations for her claim against the Defendants.

## DAMAGES

64. Plaintiff sustained injuries and damages, as a result of the incident, which injuries and damages consist of, but are not limited to the following, viz:

a. Permanent partial impairment;

b. Past and future medical expense;

c. Past and future pain and suffering;

Case 5:06-cv-05154-JLH Document 1-2 Filed 08/22/2006 Page 18 of 21



d. Grievous bodily injury;

e. Loss of enjoyment of life;

f. Past and future mental anguish;

g. Lost wages;

h. Loss of ability to earn in the future;

i. Scars, disfigurement and other visible results of her injuries;

j. Other damages that will be more particularly described during the course of the litigation.

65. Plaintiff seeks damages against the Defendants for a sum in excess of the limits for federal court jurisdiction.

66. Plaintiff specifically reserves the right to amend her Complaint following discovery to plead further claims and/or causes of action.

**JURY DEMAND**

67. Plaintiff, pursuant to Rule 38 of the Arkansas Rules of Civil Procedure, demands a jury trial on all factual issues.

WHEREFORE, the Plaintiff, Mary Campbell, prays for damages against the Defendants for a sum in excess of the limits for federal court jurisdiction, for an award of post judgment interest at the maximum rate allowable under the law, for all fees incurred in the enforcement and collection of the judgment, for all costs and expenses of litigation, and for any and all other legal or equitable relief to which the Plaintiff may prove herself entitled.

**MARY JANE CAMPBELL, PLAINTIFF** signed as authorized by David Hodges

BY: David A. Hodges

**DAVID A. HODGES**
**Attorney at Law**
**212 Center Street, Fifth Floor**
**Little Rock, AR 72201-2429**
**Arkansas Bar No. 65021**
**Telephone: 501-374-2400**
**Facsimile: 501-374-8926**
**E-Mail: david@hodgeslaw.com**

**and**

BY: Cindy L. Hawkins

**CINDY L. HAWKINS**
**Hawkins Law Firm, P.A.**
**105 Holcomb Street**
**P.O. Box 805**
**Springdale, AR 72765-0805**
**AR Bar Number 97152**
**Telephone: (479) 756-5884**
**Facsimile: (479) 756-5892**
**E-Mail: hawkinslawfirm@cox-internet.com**

Case 5:06-cv-05154-JLH Document 1-2 Filed 08/22/2006 Page 20 of 21

AUG. 8. 2006 9:28AM C. R. BARD INC NO. 2663 P. 2

# SUMMONS

IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS

CASE NUMBER CV-2006-

PLAINTIFF Mary Jane Campbell

VS.

DEFENDANT Davol Inc., C.R. Bard, Inc., Surgical Sense, Inc. and John Does 1-5

PLAINTIFF'S ATTORNEY CINDY HAWKINS

ADDRESS 105 HOLCOMB, P.O. BOX 805, SPRINGDALE, AR 72765-0805 (479) 756-5884

THE STATE OF ARKANSAS TO DEFENDANT C.R. Bard, Inc.

ADDRESS 730 Central Avenue, Murray Hill New Jersey 07974. The Registered agent for service of process is Nadia J. Bernstein, 730 Central Avenue, Murray Hill, New Jersey 07974.

NOTICE

1 You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

   A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

   B. It must be filed in the court clerk's office within TWENTY (20) days from the day you were served with this summons: OR within THIRTY (30) days if you are a non-resident of this state or sixty (60) days if you are a person incarcerated in any jail, penitentiary, or other correctional facility in this state.

3. If you desire to be represented by an attorney, you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. ADDITIONAL NOTICES ______

WITNESS MY HAND AND SEAL OF THE COURT THIS THE

28th DAY OF July, 2006.

Brenda DeShields
Brenda DeShields, Circuit Court Clerk
Courthouse
102 N.E. A Street
Bentonville, AR 72712

Kathy Cartwright
DEPUTY CLERK

STATE OF ______
COUNTY OF ______

ON THIS ______ DAY OF ______, 2006, I HAVE DULY SERVED THE WITHIN WRIT, BY DELIVERING A COPY AND STATING THE SUBSTANCE THEREOF, TO THE WITHIN NAMED ______

SHERIFF'S COSTS ______

______
SHERIFF

______
D.S.

EXHIBIT A

AUG. 8. 2006 9:31AM C. R. BARD INC NO. 2663 P. 24

U.S. POSTAGE PAID SPRINGDALE, AR AUG 07 06 AMOUNT

$9.30

07974

0800

RECEIVED AUG 0 8 2006 C.R. BARD, INC. LAW DEPT

7006 0810 0004 4943 3560

DELIVER TO ADDRESSEE ONLY

Nadia J. Bernstein
Registered agent for C.R. Bard
730 Central Avenue
Murray Hill, New Jersey 07974

Springdale, AR 72765-0805