**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| MARY JANE CAMPBELL, Plaintiff | ) | |
| v. | ) | Civil Action No.: 06-5154 |
| DAVOL INC., a Rhode Island corporation; C. R. BARD, INC., a New Jersey corporation; SURGICAL SENSE, INC., a Texas corporation; JOHN DOE I; JOHN DOE II; JOHN DOE III; JOHN DOE IV; and JOHN DOE V, Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

In this medical device product liability case, plaintiff claims that a Kugel® Hernia Patch, an FDA-approved sterile polypropylene mesh prosthesis designed for hernia repair, malfunctioned causing her to develop abdominal pain, tenderness, cellulitis, infection, urinary urgency and incontinence. Plaintiff seeks to hold liable the *current* distributors of the Patch, C.R. Bard, Inc. and Davol Inc. (hereinafter collectively "Bard"), even though the Patch used was not manufactured, distributed, or sold by either Bard or Davol.[1]

**ARGUMENT**

**A. Standard of Review**

The standards for summary judgment are well settled. Summary judgment is appropriate when there exists no genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S.

[1] On December 4, 2006, after Bard moved to dismiss on the same basis set forth here, plaintiff amended her complaint to add WCO Medical Products Corpoation as a defendant.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995). " 'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.,* 62 F.3d 237, 241 (8th Cir.1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

**B. Factual Background**

On May 21, 1999, plaintiff underwent a right mastectomy and breast reconstruction at St. Mary's Hospital. *See* Amended Compl. ¶¶ 13 & 14. Her reconstruction was accomplished by utilizing a TRAM flap procedure, which entails taking excess abdominal fat and fashioning from it a prosthetic breast. To repair her abdominal cavity, her surgeon utilized a Kugel® hernia

patch.[2] Amended Compl. ¶ 14. Following these procedures, she has allegedly developed complications that she contends are related to a defect in the Patch.

In her Complaint, plaintiff states: "Defendant, Surgical Sense, Inc. manufactured and distributed the device described in the procedural note at St. Mary's Hospital . . . . ." Amended Compl. ¶ 12. The Complaint gives a detailed citation to medical records identifying the Patch by manufacturer, lot number, and address as a Surgical Sense product.[3]

Confusingly, plaintiff also alleges that Davol Inc. manufactured the same Patch. Amended Compl. ¶ 13. But that is impossible: The Patch was implanted on May 21, 1999, and Bard did not acquire the Kugel® line of hernia repair products from Surgical Sense until January 26, 2000.[4] *See* Asset Purchase Agreement ("APA") ¶ 1.1 (attached as Exhibit A).

### C. Bard Did Not Manufacture, Distribute or Sell the Patch at Issue Nor Did Bard Assume Any liability for Such Claims.

#### a. Because Bard Did Not Manufacture the Product at Issue, Plaintiff Cannot Prove Proximate Causation.

In order to recover under the theories of negligent design, strict product liability, breaches of implied warranty of merchantability and of fitness for a particular purpose the plaintiff must establish proximate causation. *See E.I. DuPont de Nemours & Co. v. Dillaha*, 659 S.W.2d 756,

---

[2] A Kugel® hernia patch is a polypropylene mesh prosthetic device used in the repair of hernia defects. As part of its design, it incorporates a recoil ring to assist placement inside the body.

[3] The Complaint further identifies the Patch by manufacturer, lot number, and address: "The Patch that was implanted into Mary's abdomen is shown on the St. Mary's Surgical Implant Record as a Kugel Hernia Patch™, Size: Large Oval (14 x 18 cm), Cat. No.: 10-102, Lot 101698, Surgical Sense, Inc.™, 2012 E. Randol Mill Road, Suite 211, Arlington, TX 76011. SS No. 310102 Rev. C." Amended Compl. ¶ 15.

[4] Two days after selling its Kugel® product line, Surgical Sense filed Articles of Amendment changing its name to WCO Medical Products, Inc., *see* Amended Compl. ¶ 7, and that WCO maintained the same corporate officers and directors as Surgical Sense, the same corporate address as Surgical Sense, and continued on with the same general business of implantable medical products as Surgical Sense. *Id.*

757 (Ark. 1983) (strict liability, breach of implied warranty of merchantability and of fitness for a particular purpose); *Collier v. Citizens Coach Co.*, 330 S.W.2d 74, 76 (Ark. 1959) (negligence). Regardless of the theory which liability is predicated upon, whether negligence, breach of warranty, strict liability in tort, it is obvious that to hold a manufacturer liable for injury caused by a particular product, there must first be proof that the defendant was in some way responsible for the product. *See, e.g., Pruitt v. Cargill, Inc.*, 683 S.W.2d 906, 907-08 (Ark. 1985). Since the manufacture, distribution, sale, and implantation into the plaintiff of the Patch all predated Bard's acquisition of the product line, no act or omission by Bard can be the proximate cause of her alleged injury.

**b. Bard Does Not Bear The Liabilities of Surgical Sense.**

Because Bard had nothing to do with the Patch implanted into the plaintiff, it could only be liable if liability is imputed to it by law or it assumed liability by contract. Neither situation applies here.

1. Liability May Not Be Imputed To Bard By Law.

In Arkansas, "a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." *Swayze v. A.O. Smith Corporation*, 694 F. Supp. 619, 622 (E.D. Ark. 1988). This general rule is subject to the following exceptions: (1) where the transferee assumes the debt and obligations of the transferor by express or implied agreement, (2) where there is a consolidation or merger of the two corporations, (3) where the transaction is fraudulent or lacking in good faith, and (4) where the purchasing corporation is a mere continuation of the selling corporation. *Reed v. Armstrong Cork Co.*, 577 F. Supp. 246, 247-8 (E.D. Ark. 1983). Both the general rule and its exceptions have long been recognized in Arkansas. *See Swayze*, 694 F. Supp. at 622 (citing *Good v. Ferguson & Wheeler Land, Lumber & Handle Co.*, 107 Ark. 118 (1913)).

None of the exceptions to the general rule apply in this instance – upon which plaintiff bears the proof. *See Reed*, 694 F. Supp. at 622.

First, as set forth above, Bard never implicitly or explicitly assumed Surgical Sense's liability for product liability claims. Rather, Bard expressly disclaimed such liability. *See* Exhibit A at ¶¶ 1.4 & 1.5. Moreover, Surgical Sense agreed to indemnify Bard for any product liability actions. *Id.* ¶¶ 9.2, 9.4; *see Reed*, 577 F. Supp. at 251 ("Although each contract contained an indemnification agreement, these only support the view that there was no assumption of liability."). Other courts when faced with similar contractual language have refused to apply this exception to the general rule precluding liability. *Reed*, 577 F. Supp. at 251; *see also Swayze*, 694 F. Supp. at 622 ("The Court cannot, in the face of the unambiguous language of the contract, find that [defendant] intended to assume the liabilities of the predecessor corporations."). This Court should do the same.

Second, there was no merger or consolidation of Bard and Surgical Sense. A merger occurs when the seller is subsumed into the purchaser and a consolidation occurs when the two corporations combine to form a new corporation. *See, e.g., In re Asbestos Litigation (Bell)*, 517 A.2d 697, 699 (Del. Super. 1986). Here, neither of these events occurred. In the APA, Surgical Sense retained the remaining portion of its business, namely "its present business opportunity and related rights and assets relating to surgically implantable products intended to promote nerve regeneration." *Id.* at Schedule 1.0; *see also* ¶ 1.2 & Schedule 1.2. Surgical Sense, after the Kugel® product line purchase, carried on its implantable medical device business as before, but simply under a different name. *See Reed*, 577 F. Supp. at 251 (finding that acquisition of only a portion of a corporation eviscerates a finding of liability); *cf. Santa Maria v. Owens-Illinois, Inc.*,

808 F.2d 848, 861-62 (1st Cir. 1986) (change in product focus is immaterial in determining applicability of exception to general rule of no successor liability).

Third, there is no suggestion of fraud or bad faith in the asset purchase agreement either in the Complaint or the facts.

Finally, it cannot be argued that Bard should be liable under the "mere continuation" exception. Under this exception, the key element is "a common identity of officers, directors, and stock between the selling and purchasing corporations." *Swayze*, 694 F. Supp. at 622-23; *see also Reed*, 577 F. Supp. at 251; *General Star Indemnity Co. v. Elan Motorsports Tech., Inc.*, 356 F. Supp. 2d 1333, 1338-39 (N.D. Ga. 2004) ("In determining whether one corporation is a continuation of another, the test is whether there is a continuation of the corporate entity of the seller and *not* whether there is a continuation of the seller's business operation.") (emphasis added). Here, no such finding can be made. The sole directors and officers of Surgical Sense, Doug Inman and Keith Biggers, continued in the same capacities with WCO, and were only temporarily employed by Bard as consultants to ease the product line transition from Surgical Sense to Bard. Exhibit A at ¶ 7.23; *See Swayze*, 694 F. Supp. at 623 (predecessor president that continued in non-managerial role was of no consequence in liability analysis). Further, the transaction was a simple cash-for-asset purchase and did not involve the transfer of stock from either company. *See* Exhibit A at ¶ 1.3. In short, there is no indication that any commingling of Bard and Surgical Sense occurred. Thus, this exception is inapplicable as well.

2. Bard Did Not Assume Liability By Contract.

The APA details which liabilities Bard assumed and which it did not. *See* Exhibit A at ¶¶ 1.4 & 1.5. Bard expressly disavowed the assumption of any liabilities not specifically assumed. *Id.* at ¶ 1.4. For its part, Surgical Sense retained all liabilities not expressly assumed by Bard,

including "any obligation or liability of the Seller resulting from any *claim, legal or equitable action*, proceeding or investigation pertaining or relating to or arising from circumstances, events, conditions, *acts or omissions occurring or existing on or prior to the Closing Date.*" *Id.* at ¶ 1.5 (emphasis added). The current action does not fall within the liabilities Bard assumed by contract, but rather was retained by Surgical Sense or its successors.

## CONCLUSION

Bard and Davol did not make, distribute, or sell the Patch that the plaintiff says caused her injury. When they later bought the product line, they neither took on that liability by contract or by legal imputation. The claims against them must be dismissed.

Respectfully submitted,

BY: ______________________________

Kirby T. Griffis
Dana Alan Gausepohl, Bar No. 481170
Spriggs & Hollingsworth
1350 I Street N.W.
Washington, DC 20005
(202) 898-5800
(202) 682-1639 (fax)

Lyn P. Pruitt
Arkansas Supreme Court No. 84121
Mitchell Williams Selig Gates & Woodyard, P.L.L.C.
425 West Capitol Avenue
Suite 1800
Little Rock, AR 72201-3525
(501) 688-8800 main
(501) 688-8807 fax

Attorneys for defendants
C.R. BARD, INC. and DAVOL INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2007, a copy of the foregoing Memorandum in Support of C. R. Bard, Inc.'s and Davol Inc.'s Motion for Summary Judgment was electronically filed with the Court. This document is available for viewing and downloading from the Court's ECF system. Service of same has been made upon the following in the manner listed below:

David A. Hodges, Esq.
Attorney at Law
212 Center Street, Fifth Floor
Little Rock, AR 72201-2429
***Counsel for Plaintiff***

Cindy L. Hawkins, Esq.
Hawkins Law Firm, P.A.
105 Holcomb Street, P.O. Box 805
Springdale, AR 72765-0805
***Counsel for Plaintiff***

Dana Alan Gausepohl