**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS FAYETTEVILLE DIVISION**

**MARY JANE CAMPBELL** — **PLAINTIFF**

**VS.** — **NO. CV 06-5154 JLH**

**DAVOL, INC., a Rhode Island Corporation;**
**C.R. BARD, INC., a New Jersey Corporation;**
**SURGICAL SENSE, INC., a Texas Corporation;**
**JOHN DOE I; JOHN DOE II; JOHN DOE III;**
**JOHN DOE IV; and JOHN DOE IV** — **DEFENDANTS**

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO SURGICAL SENSE, INC. AND WCO MEDICAL PRODUCTS CORP.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW, the Plaintiff, Mary Jane Campbell, represented by her attorneys, David A. Hodges and Cindy Hawkins, and for her Brief in Support of Plaintiff's Response to Surgical Sense, Inc. and WCO Medical Products Corp.'s Motion to Dismiss Plaintiff's Amended Complaint, states the following:

## I. INTRODUCTION

In 1999, Ms. Campbell was diagnosed with and underwent treatment for breast cancer, including a mastectomy of her right breast. See Second Amended Compl. ¶ 13. During the reconstructive surgery that followed Ms. Campbell's mastectomy, a Kugel Hernia Patch was placed in Ms. Campbell's abdomen. See id. ¶ 14. After this surgery, Ms. Campbell began experiencing chronic abdominal pain, which doctors were unable to diagnose. See id. ¶¶ 19,

21-22. Finally, in July 2003, an ultrasound revealed a foreign object in Ms. Campbell's abdomen. See id. ¶ 23. Doctors determined that the foreign object was a "memory recoil ring" from the Kugel Hernia Patch implanted in Ms. Campbell in 1999. See id. ¶ 24. The "memory recoil ring" caused an infection in Ms. Campbell's abdominal cavity, which was very painful and led to the development of other medical problems, including cellulitus, urinary incontinence, and fever. See id. ¶¶ 29-34. These resulting medical problems required additional medical treatment, including surgeries and hospitalizations. See id. ¶ 38.

The Kugel Hernia Patch implanted in Ms. Campbell was manufactured and distributed by Surgical Sense, Inc. See Second Amended Compl. ¶ 16. After Ms. Campbell's surgery in January 2000, Separate Defendants C.R. Bard, Inc. and Davol, Inc. acquired ownership of Surgical Sense and its Kugel Hernia Patch product line. See id. ¶ 11. At that time, Surgical Sense changed its name to WCO Medical Products Corporation. See Defendants Surgical Sense, Inc.'s and WCO Medical Products Corporation's Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint ("Separate Defendants' Brief") ¶ 3. WCO existed until April 2002, when its board of directors filed dissolved the corporation. See id. ¶ 4.

Ms. Campbell filed her Complaint in this action on July 28, 2006, in the Circuit Court of Benton County, Arkansas, alleging causes of action for negligent design, strict products liability, breach of implied warranty of merchantability, breach of implied warranty of fitness, breach of express warranty, res ipsa loquitur, and breach of contract. Thereafter, the Defendants removed this action to federal court based on diversity. Surgical Sense and WCO have filed a Motion to Dismiss, and Ms. Campbell now files this Response and Brief in Support.

## III. DISMISSAL STANDARD

When considering a motion to dismiss, the court must treat the facts as alleged in the complaint or counterclaim as true and draw reasonable inferences in favor of the non-moving party. See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1062 (8th Cir. 2005). This pleading standard is liberal. See id. A complaint should be dismissed "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588 (8th Cir. 2004)). To defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction. See Dakota Indus. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

## IV. ARGUMENT

### A. Surgical Sense And WCO Have The Capacity To Be Sued

#### 1. Arkansas Law Governs Whether Surgical Sense And WCO May Be Sued

In diversity cases, the district court applies substantive state law. See Schwan's Sales Enters., Inc. v. SIG Pack, Inc., No. 06-1571, 476 F.3d 594, _____, 2007 U.S. App. LEXIS 2933, **3-4 (8th Cir. Feb. 9, 2007). To determine which state's law should apply, the court looks to the conflict-of-law principles of the state where the district court sits. See id.

Traditionally, in Arkansas, the rights of a plaintiff in a tort action are governed by the law of the state in which the injury occurred.[1] See Orintas v. Meadows, 17 Ark. App. 214, 217, 706 S.W.2d 199, 201 (1986). Arkansas courts have, however, moved away from this lex loci delecti approach and toward a rule of flexibility, or "forum preference" rule, which provides that the forum court is free to apply the substantive laws of a state which it finds has a significant interest in the outcome of the action. See Schubert v. Target Stores, Inc., 360 Ark. 404, 411, 201 S.W.3d 917, 922 (2005); Wallis v. Mrs.

---

[1] The Restatement (Second) of Conflict of Laws also provides that in an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence. See Restatement (2d) Conflict of Laws § 146 (1971).

Smith's Pie Co., 261 Ark. 622, 632, 550 S.W.2d 453, 458 (1977). In accordance with this approach, Arkansas courts utilize five "choice influencing considerations" to determine which of two states laws should apply to an action: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. See Gomez v. ITT Education Servs., Inc., 348 Ark. 69, 76-77, 71 S.W.3d 542, 546 (2002).

In this case, all of the aforementioned rules indicate that Arkansas law should determine whether Surgical Sense and WCO are capable of being sued. First, it is undisputed that Ms. Campbell's injury occurred in Arkansas. Her mastectomy and breast reconstruction was procedure was performed at St. Mary's Hospital, which is located in Rogers, Arkansas. See Compl. ¶¶ 9-10. It was during the reconstruction procedure that the Kugel Hernia Patch was placed in Ms. Campbell's abdomen. See id. ¶ 10. At all times relevant to this action, Ms. Campbell has resided in Bentonville, Arkansas, and all of the physicians who have treated the injury caused by the hernia patch are located in Arkansas. As a result, Ms. Campbell's injury clearly occurred in Arkansas.

Second, Arkansas has a significant interest in the outcome of this lawsuit. Arkansas courts have recognized that Arkansas has a real interest in protecting

its people from negligent behavior. See Schubert, 360 Ark. at 411, 201 S.W.3d at 922; see also Ganey v. Kawasaki Motors Corp., No. 05-1117, 2006 Ark. LEXIS 294, *24 (Ark. May 4, 2006) (stating that a state has an interest in protecting its citizens from defective products introduced into the stream of commerce in that state). According to Surgical Sense and WCO's arguments, if Texas law is applied to this case, Ms. Campbell will be left without a remedy for their unlawful and tortious conduct. Arkansas has a significant interest in preventing such an outcome. Therefore, Arkansas has a significant interest in this lawsuit.

Third, pursuant to the "choice influencing considerations," Arkansas law should be applied to this action. The predictability of results factor favors Arkansas because the remedies allowed by the two states is substantially different. As set forth below, Arkansas law would allow this lawsuit to proceed, while Texas law would not. The maintenance of interstate order and the advancement of the forum's governmental interests factors also favor Arkansas because, as established above, Arkansas has a significant interest in this case and a significant relationship to the plaintiff. Finally, Arkansas has the better rule of law in this case because Arkansas law provides redress for Ms. Campbell's claims. Accordingly, the "choice influencing considerations" indicate that Arkansas law should be applied in this case.

## 2. Arkansas Law Allows Suit Against A Dissolved Corporation

Pursuant to Arkansas law, a dissolved corporation may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place. See Ark. Code Ann. § 4-26-1104(a). For this purpose, the existence of a corporation as a legal entity is preserved indefinitely. See id.

A dissolved corporation may be sued in its corporate name in all courts in Arkansas. See Ark. Code Ann. § 4-26-1104(b)(4). A dissolution does not affect any remedy available against the corporation for any right or any claim that existed or any liability which was incurred before the dissolution. See id. § 4-26-1405(b)(5). Arkansas law specifically states that the dissolution of a corporation does not prevent the commencement of a proceeding against the corporation in its corporate name. See id. 4-26-1405(b)(5).

Here, the fact that WCO has dissolved is not a bar to Ms. Campbell's claims against it and Surgical Sense under Arkansas law. Contrary to the law in Texas, a corporation exists as a legal entity indefinitely in Arkansas, and even if dissolved, may be sued for claims that arose prior to dissolution. Ms. Campbell's claim against Surgical Sense and WCO arose in 1999 after her reconstruction surgery, before Surgical Sense changed its name to WCO, and over two years before WCO dissolved. Therefore, Surgical Sense and WCO

have the capacity to be sued under Arkansas law. The fact that WCO is dissolved is no basis for dismissing this action.

Additionally, Arkansas law contains no limitation period for this suit other than the applicable statutes of limitation for the causes of action. As such, the fact that this lawsuit was brought more than three years after WCO's dissolution has no bearing on the viability of this lawsuit under Arkansas law.

**B. Arkansas Courts Have Jurisdiction Over Surgical Sense And WCO**

**1. This Court Can Exercise Jurisdiction Over Dissolved Corporations**

As established above, Arkansas law should be applied to determine whether Surgical Sense and WCO have the capacity to be sued. Under Arkansas law, suit may be maintained against the companies even though they have dissolved. Contrary to their arguments, Arkansas law recognizes the existence of a corporation as a legal entity indefinitely. See Ark. Code Ann. § 4-26-1104(a). As such, even though Surgical Sense and WCO no longer exist on paper, they continue to exist as legal entities under Arkansas law, and this Court may assert jurisdiction over them.

**2. The Exercise Of Personal Jurisdiction By This Court Is Proper**

Arkansas courts have personal jurisdiction over all persons and all causes of action or claims for relief to the maximum extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution.

See Davis v. St. Johns Health Sys., 348 Ark. 17, 22-23, 71 S.W.3d 55 (2002) (citing Ark. Code Ann. § 16-4-101(B); John Norell Arms, Inc. v. Higgins, 332 Ark. 24, 962 S.W.2d 801 (1998)).

The United States Supreme Court has identified two types of personal jurisdiction: general and specific. See Davis, 348 at 23-24 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)). When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction. See id. In contrast, general jurisdiction exists when a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. See Burger King Corp., 471 U.S. 462, 472 n.15 (1985); see also Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (stating that general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose).

In the context of specific jurisdiction, courts consider whether a defendant has availed himself of the privilege of conducting business in the forum state or has invoked the benefits and protections of its laws. See Burnham v. Superior Court of Cal., 495 U.S. 604, 638 n.12 (1990). A prima facie case of specific personal jurisdiction is established if the defendant

purposefully directed its activities at the forum state's residents and if the claim arises out of or relates to those activities. See Lakin, 348 F.3d at 707. With respect to interstate contractual obligations, the Untied States Supreme Court has emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." Burger King Corp., 471 U.S. at 473.

Notwithstanding the aforementioned principles, the constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum state which does not offend traditional notions of fair play and substantial justice. See Burger King Corp., 471 U.S. at 474; Ganey v. Kawasaki Motors Corp., U.S.A, No. 05-1117, 2006 Ark. LEXIS 294, *10 (May 2, 2006). Jurisdiction is proper where the defendant's contacts proximately result from its actions and create a substantial connection with the forum state. See Burger King Corp. at 475. Where the defendant has deliberately engaged in significant activities within the state or has created continuing obligations between it and residents fo the forum, it has availed itself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum state's laws, it is

presumptively reasonable to require it to submit to the burdens of litigation in that forum as well. See id. at 475-76.

When a corporation purposefully avails itself of the privilege of conducting activities in the forum state, it has clear notice that it is subject to suit there. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 110 (1987). Personal jurisdiction may be found where a seller delivers its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state. See Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003). If the sale of a product of a manufacturer or distributor is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its products in other states, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has caused injury to its owner or to others. See Asahi Metal Indus., Inc., 480 U.S. at 110 (citing Hanson v. Denckla, 357 U.S. 235 (1958)). So long as a commercial actor's efforts are purposefully directed toward residents of another state, an absence of physical contacts with the state cannot defeat personal jurisdiction. See Quill Corp. v. North Dakota, 504 U.S. 298, 308 (1992).

The United States Court of Appeals for the Eighth Circuit has recognized that non-resident sellers who ship goods into the forum state are likely to have

minimum contacts with the forum state. See Precision Constr. Co. v. J.A. Slattery Co., 765 F.2d 114, 118 (8th Cir. 1985). For example, the Eighth Circuit determined that a foreign commercial defendant purposefully availed itself of the privilege of doing business in Minnesota by entering into a transaction with a Minnesota resident that impacted on the commerce of that state. See Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 368 (8th Cir. 1969). The Court emphasized that by doing so, the defendant involved the benefit and protection of Minnesota laws and could reasonably have anticipated that its act would have consequence in Minnesota. See id.

The issue of personal jurisdiction in this case is one of specific jurisdiction because Ms. Campbell's causes of action arise out of Surgical Sense and WCO's contacts with the State of Arkansas. The exercise of personal jurisdiction by this Court is proper because Surgical Sense and WCO purposefully directed their activities toward Arkansas and because Ms. Campbell's injuries arose out of that conduct. Therefore, Ms. Campbell has established a prima facie case for the exercise of specific personal jurisdiction over Surgical Sense and WCO in this case.

The events that led to Ms. Campbell's injuries, namely the implantation of the defective hernia patch, occurred at a hospital in Arkansas. Ms. Campbell was injured as a result of the defective patch coupled with the negligent and

otherwise tortious conduct of the various Defendants, including Surgical Sense and WCO. Surgical Sense and WCO designed and manufactured the hernia patch that caused Ms. Campbell's injuries and specifically distributed the patch to St. Mary's Hospital, an Arkansas resident.

Surgical Sense and WCO also entered into a contract with Ms. Campbell, an Arkansas resident, for the sale of the hernia patch. According to the Arkansas Supreme Court, a "sale" is defined as a contract transferring the absolute or general ownership of property from one person to another for a price. See Dean v. State, 732 S.W.2d 855, 857 (Ark. 1987) (emphasis added); see also Black's Law Dictionary (defining "contract for sale" as "[a] contract for the present transfer of property for a price"). There is no doubt that Surgical Sense and WCO sold to St. Mary's Hospital and to Ms. Campbell the hernia patch that was implanted in her. Ms. Campbell paid for the product, and Surgical Sense and WCO transferred ownership in the product to Ms. Campbell, creating a contract for sale.

The aforementioned facts illustrate that Surgical Sense and WCO purposefully distributed and sold their product to an Arkansas residents—St. Mary's Hospital and Ms. Campbell. Surgical Sense and WCO placed their product into the stream of commerce with the expectation that the product would be purchased by Arkansas residents. Surgical Sense and WCO also

reached out and created a contractual relationship and obligation with Arkansas residents through the sale of their hernia patch, which resulted in injury to Ms. Campbell. As such, it is not unreasonable or a violation of due process to subject Surgical Sense and WCO to suit in Arkansas. Ms. Campbell has established a prima facie case of specific personal jurisdiction because Surgical Sense and WCO purposefully directed its activities toward Arkansas and because this lawsuit arises out of and relates to those activities.

In the alternative, if the Court concludes that a prima facie case of personal jurisdiction has not been established, Ms. Campbell requests that the Court postpone ruling on Surgical Sense and WCO's Motion to Dismiss until discovery regarding the nature of their contacts with the State of Arkansas is conducted. Typically, in response to a corporate defendant's challenge to personal jurisdiction, courts allow the plaintiff to conduct reasonable discovery on that issue so it may be decided on a full jurisdictional fact record. See Pohlmann v. Bil-Jax, Inc., 176 F.3d 1110, 1113 (8th Cir. 1999).

**C. Ms. Campbell Has Stated A Claim Upon Which Relief May Be Granted**

As established above, Surgical Sense and WCO have the capacity to be sued under Arkansas law, and the only limitations period applicable to Ms. Campbell's claims are the statutes of limitation for each claim asserted, which are not alleged to have run. Because Surgical Sense and WCO do not challenge

the factual sufficiency of Ms. Campbell's claims, she has stated claims upon which relief may be granted.

## V. CONCLUSION

Based on the foregoing, Surgical Sense and WCO have the capacity to be sued under Arkansas law, which is applicable to this case. Surgical Sense and WCO have also had sufficient minimum contacts with the State of Arkansas to make the exercise of personal jurisdiction by this Court proper. And, finally, Ms. Campbell has pleaded sufficient facts to state claims upon which relief may be granted. Consequently, no basis exists for dismissing the claims asserted against Surgical Sense and WCO, and Ms. Campbell respectfully requests that their Motion to Dismiss Plaintiff's Amended Complaint be denied.

**MARY JANE CAMPBELL, PLAINTIFF**

**By: /s/ David A. Hodges**
**DAVID A. HODGES**
**Attorney at Law**
**Centre Place Building**
**212 Center Street, Fifth Floor**
**Little Rock, Arkansas 72201-2429**
**Arkansas Bar No. 65021**
**Telephone: (501) 374-2400**
**Facsimile: (501) 374-8926**
**E-Mail: david@hodgeslaw.com**
**Web: www.hodgeslaw.com**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Dana Alan Gausepohl
Cindy L. Hawkins
Lyn Peeples Pruitt
William Douglas Martin

**/s/ David A. Hodges**
**DAVID A. HODGES**



HO/br